**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HERBERT N. PRICE, JR.,**

> **Petitioner,**

**v.**                                                          **Case No. 6:09-cv-1061-Orl-35GJK**

**SECRETARY, DEPARTMENT OF**
**CORRECTIONS, et al.,**

> **Respondents.**

_____/

### ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section

2254 (Doc. No. 7).   Upon consideration of the amended petition, the Court ordered

Respondents to show cause why the relief sought in the petition should not be granted.

Thereafter, Respondents filed a response to the amended petition for writ of habeas

corpus in compliance with this Court's instructions and with the _Rules Governing Section_

_2254 Cases in the United States District Courts_ (Doc. No. 13).   Petitioner filed a reply to

the response (Doc. No. 25).

Petitioner alleges thirteen claims for relief in his habeas petition: (1) the information

failed to charge a crime in violation of his Fifth, Sixth, and Fourteenth Amendment rights

(claim one); (2) trial counsel rendered ineffective assistance by (a) failing to convey a plea

offer (claim two), (b) failing to object to the State's peremptory strike of an African

American juror (claim three), (c) failing to object to the exclusion of males from the jury

(claim four), (d) misstating the law (claim five), (e) failing to object to an erroneous jury

instruction (claim six), (f) failing to file a motion to dismiss (claim seven), (g) failing to move

for a new trial (claim eight), and (h) trial counsel rendered ineffective assistance based on a conflict of interest (claim nine); (3) appellate counsel rendered ineffective assistance by (a) failing to comply with the appellate rules (claim ten), and (b) representing that she had reviewed the entire record (claim eleven), (4) the appellate court erred by dismissing his direct appeal (claim twelve), and (5) the State failed to prove that the victim was physically incapacitated pursuant to Florida law (claim thirteen).   For the following reasons, the petition is denied.

## I.    *Procedural History and Facts Adduced at Trial*

Petitioner was charged with sexual battery on a physically incapacitated person.[1] At trial, the victim, who is Caucasian, testified that Petitioner, who is African American, had dated her former roommate.   According to the victim, after Petitioner and her roommate stopped dating and her roommate moved out of the apartment, Petitioner began to call her. The victim said that on the date of the incident Petitioner arrived at her apartment and cajoled her into driving with him to pick up something to eat.   The victim testified that Petitioner purchased food and then, instead of returning her to her apartment, drove to an unknown location, which she subsequently discovered was a motel.   The victim stated that Petitioner took her into the motel room he had rented and raped her.

In contrast, Petitioner testified that the encounter was consensual.   Additionally, the victim's former roommate testified that on prior occasions the victim had made allegations of rape against other individuals.   At the conclusion of the trial, the jury found Petitioner guilty as charged.   The state trial court sentenced Petitioner to ten years of imprisonment

---

[1]The victim in the case was blind.

to be followed by fifteen years of probation.  Petitioner initially appealed his conviction through private counsel.  Subsequently, Petitioner dismissed his private counsel, and a public defender was appointed to represent him.  The public defender filed an *Anders*[2] brief and moved to withdraw.  Thereafter, Petitioner filed a motion to voluntarily dismiss his appeal in order to pursue his post-conviction remedies.  The Fifth District Court of Appeal of Florida granted Petitioner's motion.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  The state court denied the motion, and Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam*.

While his appeal was pending, Petitioner filed a state petition for writ of habeas corpus with the trial court, alleging that the information on which he was charged was defective.  The trial court denied the petition, and Petitioner appealed.  The Fifth District Court of Appeal affirmed.  Petitioner appealed to the Supreme Court of Florida, which affirmed.

Petitioner filed a state petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel in the Fifth District Court of Appeal, which denied the petition.  Petitioner then filed a state petition for writ of habeas corpus, asserting that the information was defective with the Supreme Court of Florida, which transferred the petition to the Fifth District Court of Appeal.  The Fifth District denied the petition, and Petitioner filed another state petition for writ of habeas corpus in the Second District Court of Appeal of Florida, alleging that the information was defective.  The court transferred the case to

---

[2]*Anders v. California*, 386 U.S. 738 (1967).

the Fifth District Court of Appeal, which denied the petition.  Thereafter, Petitioner filed a

fifth state petition for writ of habeas corpus with the Fifth District Court of Appeal, and the

court dismissed the petition.

## II.    Legal Standards

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432

F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the

Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a

4

> federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690;

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. Analysis

### A. Claim One

Petitioner asserts that the information failed to charge a crime in violation of his Fifth, Sixth, and Fourteenth Amendment rights.   In support of this claim, Petitioner contends that the information failed to allege, "Herbert Price committed an act upon [the victim] in which the sexual organ of Herbert Price penetrated or had union with the vagina of [the victim]."[4]   (Doc. No. 7 at 6.)   Respondents argue that this claim is procedurally barred from review by this Court because it was deemed to be barred by the state court.

---

[4]The information charged that Petitioner "did unlawfully commit sexual battery by oral and/or vaginal penetration by, or union with the sexual organ of [the victim], a person 12 years of age or older, without [the victim's] consent and while [the victim] was physically incapacitated, contrary to Florida Statute 794.011(4)(f). (1 DEG FEL)."

Under the AEDPA, this Court is precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)  (I)  there is an absence of available State corrective process; or
>
>      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.  *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t]

federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).  The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful."  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

The record establishes that Petitioner raised claim one in his state habeas petition, and the state court denied the claim because it should have been raised on direct appeal. (App. M at 16.)  Petitioner appealed, and the Fifth District Court of Appeal affirmed the trial court, concluding that the claim was procedurally barred as it should have been raised on direct appeal.  *Price v. State*, 937 So. 2d 702 (Fla. 5th DCA 2006).  Petitioner sought discretionary review from the Supreme Court of Florida, which affirmed, concluding that the information was not fundamentally defective, and thus, the claim should have been raised on direct appeal.  (App. Q.)  Accordingly, the Court must deny this claim as procedurally barred unless Petitioner establishes one of the two exceptions to the procedural default rule.

First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default."  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  The second exception, known as the "fundamental miscarriage of justice," only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Id*.  In the present case, Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence

exception.  A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, claim one is procedurally barred and must be denied.[5]

### B.    Claim Two

Petitioner asserts that trial counsel rendered ineffective assistance by failing to convey a plea offer.  In support of this claim, Petitioner maintains that counsel did not convey the prosecutor's plea offer of three years in prison to be followed by five years of sexual offender probation which was made prior to voir dire.

The state trial court conducted an evidentiary hearing on this claim after which it denied relief.  In denying relief, the state court determined that Petitioner admitted that he heard the prosecutor make the plea offer in open court.  (App. I at 296.)  The state court further noted that defense counsel testified that Petitioner was adamant that he did not want to enter a plea because he was innocent, she advised Petitioner of the plea offer, and she explained the consequences of proceeding to trial versus accepting the plea offer.  *Id*. The state court found defense counsel's testimony to be credible and concluded that Petitioner failed to demonstrate either deficient performance or prejudice in relation to the plea offer.  *Id*. at 296-97.

When a defendant challenges the entry of a not-guilty plea based on ineffective assistance of counsel, he "'must show that there is a reasonable probability that, but for

---

[5]Alternatively, even if the Court concluded that the claim was not procedurally barred, the claim would be denied as the state court's ruling is neither contrary to, nor an unreasonable application of, federal law.  The Supreme Court of Florida determined that the information alleged the essential elements of the crime as required by Florida law. (App. Q at 5-6.)

counsel's errors, he would have pleaded guilty and would not have insisted on going to trial.'" *Guerra v. Secretary For Dept. of Corrections*, 2008 WL 821063, *2 (11th Cir. 2008) (quoting *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)); *see also Carson v. Thompson*, 230 F. App'x 890, 891 (11th Cir. 2007).   Furthermore, when considering such claims, a federal court must presume that the state court's factual findings as to credibility determinations are correct absent clear and convincing evidence to the contrary.   *See Guerra*, 2008 WL 821063 at *1 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The record supports the state court's denial of this claim.   The prosecutor placed the plea offer on the record prior to trial, and Petitioner admitted that he heard the plea offer.   Defense counsel further testified at the evidentiary hearing that she discussed the plea offer with Petitioner and he was adamant throughout the proceedings that he did not want to enter a plea because he was innocent.   Petitioner has failed to offer clear and convincing evidence demonstrating the state court's determination that defense counsel's testimony was credible was erroneous.   As such, Petitioner has failed to demonstrate that counsel was deficient in failing to convey the plea offer or that he was prejudiced by counsel's alleged failure to convey the plea offer.   Accordingly, this claim is denied pursuant to Section 2254(d).

### C.    Claims Three and Four

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the State's peremptory strike of the sole African American in the venire (claim three).   Likewise, in claim four, Petitioner maintains that counsel rendered ineffective assistance by failing to object to the exclusion of males from the jury.   The jury consisted

of five females, one male, and a female alternate.

Petitioner raised these claims in his Rule 3.850 motion, and the state court denied relief. The state court reasoned that Petitioner failed to demonstrate that any biased juror served on his jury, thereby precluding relief. (App. I at 181.)

"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (internal citations omitted). Likewise, "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause. . . ." *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 131 (1994). As such, the Court established the following three-step test for evaluating claims of race or gender discrimination in jury selection:

> The defendant must first establish a prima facie case by producing evidence sufficient to support the inference that the prosecutor exercised peremptory challenges on the basis of race. *Johnson v. California*, 545 U.S. 162, 125 S. Ct. 2410, 162 L. Ed.2d 129 (2005); *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. The burden then shifts to the State to rebut the defendant's prima facie case by offering race-neutral explanations for its challenges. *Batson*, 476 U.S. at 97, 106 S. Ct. at 1723. The State's proffered explanation at this stage need not be "persuasive or even plausible . . . the issue is the facial validity of the prosecutor's explanation." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (internal quotation omitted).
>
> If both sides carry their burdens, it is left to the court to determine whether the defendant has proven purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S. Ct. at 1724. At this point, "the decisive question will be whether counsel's race-neutral explanation . . . should be believed." *Hernandez v. New York*, 500 U.S. 352, 365, 111 S. Ct. 1859, 1869, 114 L.

11

Ed.2d 395 (1991) (plurality opinion).  This is "a pure issue of fact, subject to review under a deferential standard . . . [and] peculiarly within a trial judge's province."  *Id.* at 364-65, 111 S. Ct. at 1869 (internal quotation omitted).

*McNair v. Campbell,*  416 F.3d 1291, 1310 (11th Cir. 2005).

In considering a claim of ineffective assistance of counsel for failing to raise a *Batson* objection, the Eleventh Circuit has recognized that courts may consider if the record reflects whether the State had a valid, race-neutral reason for its challenge.  *See West v. Secretary for Dept. of Corrections*, 151 F. App'x 820, 824 (11th Cir. 2005); *see also Miller-El v. Cockrell*, 537 U.S. 322, 351 (2003) (concluding prospective juror's brother's convictions for drug offenses was a race-neutral reason for striking the juror); *United States v. Alston*, 895 F.2d 1362, 1367 (11th Cir. 1990) (determining prior involvement with drug offenses was race-neutral reason).  If the record reflects that the State had a race-neutral reason for its challenge, counsel will not be deemed deficient for failing to raise a *Batson* objection nor can the petitioner demonstrate prejudice.  *See, e.g, West*, 151 F. App'x at 824.  Furthermore, the Eleventh Circuit has held that "a petitioner seeking habeas relief on a claim that his trial counsel rendered ineffective assistance in failing to raise an equal protection objection during voir dire cannot succeed on that claim unless he can demonstrate that the outcome of his trial was affected by the equal protection violation." *Eagle v. Linahan*, 279 F.3d 926, 943 n.22 (11th Cir. 2001) (citing *Jackson v. Herring*, 42 F.3d 1350, 1362 (11th Cir. 1995) (finding that the habeas petitioner could not demonstrate that he was prejudiced by his trial counsel's failure to object because "[n]othing in the record indicates that a racially balanced jury would have been more likely to acquit or convict of a lesser charge than was the all-white jury in this case")); *cf. Davis v. Secretary*

*for Dept. of Corrections,* 341 F.3d 1310, 1316 (11th Cir. 2003) (holding "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.").

In the instant case, the record does not reflect why the prosecutor exercised a peremptory challenge to the sole African-American juror.   During voir dire, the following colloquy occurred between the prosecutor and the prospective African-American juror:

[Prosecutor]:          Ms. Edlow, is that your married name or your maiden name?

[Prospective Juror]: Married name.

[Prosecutor]:          Okay.  Where are your husband's parents?  Where do they live?

[Prospective Juror]: In Volusia County, in Deltona.

[Prosecutor]:          Okay.  Do you know where they go to church?

[Prospective Juror]: Yes, I do.

[Prosecutor]:          Where?

[Prospective Juror]: They go to New Hope Baptist Church in Deltona.

[Prosecutor]:          Have you ever attended that church?

[Prospective Juror]: Yes, I have.

[Prosecutor]:          Have you ever seen me?

[Prospective Juror]: No, I have not.

[Prosecutor]:          Okay.  So you. . . you don't know me at all?

[Prospective Juror]: No.

> [Prosecutor]:        How often do you talk to your husband's family, to your in-laws?

> [Prospective Juror]: At least three times a week.

(App. C at 169-70.)  Although the prosecutor's questions imply she may have attended church with the prospective juror's in-laws, there is nothing in this exchange from which the Court can conclude that this is in fact the case.  Furthermore, there is no indication that the prospective juror knew the prosecutor.  Therefore, given the absence in the record of a race-neutral reason for the peremptory strike, it appears that defense counsel may have been deficient for failing to raise a *Batson* challenge.[6]

Even so, Plaintiff must demonstrate that the striking of the lone African-American juror prejudiced the outcome of the case.  On this issue Petitioner fails.  Petitioner has not demonstrated that he was prejudiced by counsel's performance.  The state court found that there is no indication that anyone who was seated on the jury was biased or impartial.  Furthermore, race was not a central issue in the case.  Although the victim was white and Petitioner is African American, that fact was not a central theme of the case.  Moreover, there is no evidence that an African American juror would have seen the evidence any differently than the white jurors seated on the jury.  As such, Petitioner has not established

---

[6]Notably, resolution of this clam is complicated because the state court did not conduct an evidentiary hearing on trial counsel's basis for failing to make a *Batson* challenge. The Supreme Court has recently held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. . . . It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) Thus, the Court's resolution of the claim is limited to the record solely before the state court, despite the fact that the record does not demonstrate a race-neutral reason for the prosecutor's peremptory strike of the sole African-American juror.

that a reasonable probability exists that a race or gender balanced jury would have been more likely to acquit or convict him of a lesser offense.

The Court notes that it is questionable whether any petitioner would ever be able to establish that trial counsel was ineffective for failing to make a *Batson* challenge pursuant to the *Strickland* standard.  To do so, the petitioner would have to demonstrate that a reasonable probability existed that the outcome of his trial would have been different had the potential juror not been excused, a requirement not necessary to establish a *Batson* violation.  In fact, the Eleventh Circuit has expressed its concern with this anomaly:

> While the *Strickland* prejudice prong does seem to require this showing, *see supra*, we are troubled by the practical implication of that requirement when the alleged deficient performance is failure to raise a *Batson*-type claim at trial or on appeal.  How can a petitioner ever demonstrate that the racial make-up of the jury that convicted him affected its verdict?  Furthermore, in requiring a petitioner to make such a showing, we are asking that he convince us of the very conclusion that *Batson* prohibits: that the race of jurors affects their thinking as jurors.  Certainly we acknowledge, as Justice O'Connor noted in *J.E.B. v. Alabama*, 511 U.S. 127, 148, 114 S. Ct. 1419, 1432, 128 L. Ed. 2d 89 (1994) (O'Connor, J., concurring), that, like any other attribute an individual brings to jury service, race matters, but the foundation of *Batson* is that race cannot be allowed to matter if the Equal Protection Clause is to be given its full due.  The Equal Protection Clause simply prohibits the use of race as a proxy in the exercise of peremptory challenges.  As Justice Kennedy observed in *J.E.B.*, 511 U.S. at 154, 114 S. Ct. at 1434, "[n]othing would be more pernicious to the jury system than for society to presume that persons of different backgrounds go to the jury room to voice prejudice."  That being the case, how can a court, in attempting to give force to the Equal Protection Clause, ask a habeas corpus petitioner to prove, or itself conclude, that the bare factor of juror race, standing alone, affected the outcome of his trial?

*Eagle*, 279 F.3d at 943 n.22.  In light of this dilemma, the *Eagle* Court noted that in considering ineffective assistance of counsel claims premised on *Batson*-type claims, "[p]erhaps . . . we should follow Supreme Court precedent in cases where racial

discrimination has altered the composition of the indicting grand jury by 'revers[ing] the conviction . . . without inquiry into whether the defendant was prejudiced in fact by the discrimination.'" *Id*. (quoting *Rose v. Mitchell*, 443 U.S. 545, 556, 99 S. Ct. 2993, 3000, 61 L. Ed. 2d 739 (1979)). "In other words, where counsel's constitutionally ineffective representation lets stand a structural error that infects the entire trial with an unconstitutional taint, perhaps we should not require the defendant to prove actual prejudice in the outcome of his trial." *Id*.

To implement the Eleventh Circuit's suggestion in *Eagle* could potentially elevate an ineffective assistance of counsel claim based on failure to raise a *Batson* challenge to require a presumption of prejudice as contemplated by *United States v. Cronic*, 740 U.S. 897 (1984). As the language in *Eagle* appears to be dicta, until such time as the Eleventh Circuit recedes from or reverses *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995), this Court is bound by precedent to apply *Strickland's* prejudice requirement to such claims. Accordingly, relief is denied on this claim, but a certificate of appealability is granted on this claim.

Turning to the prosecutor's peremptory strikes of males from the jury, the record demonstrates that the prosecutor exercised three peremptory challenges to males (jurors eleven, fifteen, and seventeen).[7] Of the three males stricken by the prosecutor, one (juror

---

[7]The venire consisted of twenty jurors, (1) Lois Searnock (female), (2) Charlotte Young (female), (3) Donald Bass (male), (4) Lynann Albano (female), (5) Hilda Edlow (female), (6) Gail Skreland (female), (7) Tami Thorne (female), (8) Arthur Kessel (male), (9) Jean Robertson (female), (10) Aaron Collins (male), (11) Hal Shutter (male), (12) Mary Shankland (female), (13) Dawn McIntosh (female), (14) Hazel Pomfret (female), (15) Barry Troutman (male), (16) Deborah Vantreuren (female), (17) Albert Starr (male), (18) June

fifteen) had been charged in the past with felony possession of marijuana. (App. C at 137.) Two of the males (jurors eleven and fifteen) indicated that they had experience with blind people, and one (juror seventeen) said his mother was visually impaired. *Id*. at 159-61, 167. Juror eleven, who was a postal worker, also stated that he had delivered a package to a blind customer who was able to maneuver easily throughout her home and did not require any special concessions because she was blind. *Id*. at 163, 196-97. Juror seventeen indicated that he did not believe that blind people should have special laws applicable to them. *Id*. at 188. Thus, gender-neutral reasons existed for the prosecutor to strike these potential jurors. Additionally, Petitioner has not demonstrated that he was prejudiced by the prosecutor striking these prospective jurors.

As such, these claims are denied pursuant to Section 2254(d).

### D.      Claim Five

Petitioner asserts that trial counsel rendered ineffective assistance by misstating the law. Specifically, Petitioner complains that during opening statement defense counsel misstated the law concerning the meaning of reasonable doubt.

Petitioner raised this claim in his Rule 3.850 motion. The state court determined that Petitioner's claim that counsel's statement was highly prejudicial because it inflamed the minds of the jurors was purely speculation. (App. I at 182.) The state court concluded that Petitioner failed to demonstrate that he was prejudiced by counsel's statements during

---

Wallace (female), (19) Daniel Perkins (male), and (20) Ann Smith (female). Thus, the venire consisted of thirteen females and seven males. The prosecutor struck three females and three males. Defense counsel struck four females and two males and indicated that the remaining male in the venire was not acceptable as an alternate. The jury panel included five females, one male, and one female alternate.

opening argument.  *Id.*

The record reflects that during opening argument, defense counsel made the following argument:

[Defense Counsel]:   As the State stated to you in her opening argument, before you can find [Petitioner] guilty of the offense of sexual battery, there must not be reasonable doubt. There has to be doubt or no doubt at all.

[Prosecutor]:   Objection, misstatement of the law.

The Court:   The jury will rely on the Court's instructions as to the law at the end of the case.

[Defense Counsel]:   And that is true.  The Court will instruct you on the law.

The weight of the State is very, very high.  The burden of proof is very great.  [Petitioner] doesn't have to prove anything.

The State has to prove, however, that Ms. Wardell was forced into having sex with Petitioner against her will.

The State has to prove that [Petitioner] knew that she was blind and that he used her blindness as a way to more or less take advantage - -

[Prosecutor]:   Objection, misstatement of the law.

[Defense Counsel]:   - - of her.

The Court:   All right.  Let's not get into statements of the law.  The Court will instruct the jury on the law.

(App. C at 47.)  Thereafter, prior to jury deliberations, the trial court properly instructed the jury regarding reasonable doubt and the elements of the offense.  *Id*. at 423-26.   "The jury is presumed to follow the instructions they are given."  *United States v. Chandler*, 996 F.2d 1073, 1088 (11th Cir. 1993).  Thus, to the extent defense counsel misstated the law,

Petitioner has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different had counsel not done so.  Accordingly, claim five is denied pursuant to Section 2254(d).

### E.    Claim Six

Petitioner maintains that counsel rendered ineffective assistance by failing to object to an erroneous jury instruction.  In support of this claim, Petitioner appears to argue that the jury was not instructed as to the lesser-included offenses.[8]

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief.  (App. I at 182.)  The state court determined that the jury was instructed on the lesser included offenses.  *Id*.

The state court's determination is supported by the record.  The trial court instructed the jury on the lesser included offenses of sexual battery and battery.  (App. C at 423-24.)  As such, Petitioner has not demonstrated either deficient performance or prejudice, and claim six is denied pursuant to Section 2254(d).

### F.    Claim Seven

Petitioner asserts that counsel rendered ineffective assistance by failing to file a motion to dismiss the information.  In support of this claim, Petitioner contends that the information failed to allege "that [Petitioner] committed an act upon [the victim] in which the sexual organ of [Petitioner] pentrated or had union with the vagina of [the victim]."  (Doc.

---

[8]The Court will address this claim as it was raised in the state court.  To the extent Petitioner is arguing that counsel rendered ineffective assistance by not arguing that the evidence was insufficient to convict him of sexual battery on a physically incapacitated person, this claim will be addressed in claim eight.  Likewise, to the extent Petitioner may be arguing that counsel was ineffective for failing to file a motion to dismiss the information, this claim is addressed in claim seven.

No. 7 at 15-16.)  Respondents maintain that this claim is procedurally barred from review by this Court as it was not raised in the state court and is unexhausted. Even so, the Florida Supreme Court considered the matter and determined that the elements were sufficiently alleged. (App. Q at 4-5.)

Review of the record demonstrates that Petitioner did not raise this issue in the state courts.  A federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.  *Coleman*, 501 U.S. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims); *see also Smith v. Secretary Department of Corrections*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden*, 135 F.3d at 736 ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")). Petitioner could not return to the state court to raise this ground because any Rule 3.850 motion for post-conviction relief would be barred in the state court as untimely or successive.  Fla. R. Crim. P. 3.850(b) and (f).

Furthermore, Petitioner has neither alleged nor shown cause or prejudice that would excuse any procedural default.  Likewise, he has not shown the applicability of the actual innocence exception.  A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.   Therefore, claim seven is

procedurally barred from review by this Court.

### G.    Claim Eight

Petitioner contends that counsel rendered ineffective assistance by failing to move for a new trial.  In support of this claim, Petitioner argues that counsel should have moved the trial court to set aside the verdict as contrary to the weight of the evidence.  Notably, Petitioner does not indicate in the petition what evidence was lacking.  He simply argues in conclusory fashion that the verdict was contrary to the weight of the evidence.

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief.  (App. H at 183-84.)  The state court reasoned that Petitioner failed to demonstrate prejudice because there was no reasonable probability that the court would have set aside the jury's verdict based on lack of evidence.  *Id*. at 183.  The state court further noted that defense counsel moved for a judgment of acquittal at the close of the State's case and at the close of all evidence, and both motions were denied.  *Id*.

The state court's determination is supported by the record.  Defense counsel twice moved for a judgment of acquittal based on insufficient evidence.  (App. C at 211-14, 377-78.)  The trial court denied the motion both times concluding that sufficient evidence had been presented to allow the case to go to the jury.  *Id.*  In light of the trial court's denial of counsel's motions for judgment of acquittal, the Court cannot conclude that a reasonable probability exists that the trial court would have granted a new trial or set aside the verdict as contrary to the weight of the evidence.  Accordingly, this claim is denied pursuant to Section 2254(d).

### H.    Claim Nine

21

Petitioner contends that trial counsel rendered ineffective assistance based on a conflict of interest that adversely affected her performance.  In support of this claim, Petitioner states that prior to his trial, he asked his attorney, Vinette Morris Hudson ("Hudson"), if he should open a business and she told him to "go ahead live your life[,] start your business[,] you'll be fine." (Doc. No. 7 at 17.)   Petitioner maintains that after his conviction, Hudson coerced him into giving her fiancé, Raymond Johnson ("Johnson"), power of attorney.  Petitioner alleges that Hudson and Johnson thereafter looted his house, business, and personal bank accounts of more than $15,000.00.  *Id*.

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief pursuant to *Strickland*.  (App. I at 184.)  The state court noted that Petitioner failed to allege how the purported conflict of interest affected the outcome of his trial in light of the fact that the alleged conflict behavior occurred subsequent to his conviction and sentencing.  *Id*. The state court concluded that Petitioner failed to demonstrate either of the *Strickland* prongs. *Id*.

*Strickland* is the standard by which claims of ineffective assistance of counsel are analyzed.  However, a conflict of interest claim may be reviewed under a different standard in certain instances.  *See Cobb v. McNeil*, 2010 WL 3603795, *4 (N.D. Fla. 2010).  In *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), the Court held that if a defendant establishes (1) "that his counsel actively represented conflicting interests" and (2) that the conflict "adversely affected his lawyer's performance," then a defendant is presumed to be prejudiced.  *Sullivan*, 446 U.S. at 350.

Nevertheless, the Eleventh Circuit has recognized that *Sullivan* only encompasses

an attorney conflict of interest stemming from the concurrent joint representation of criminal defendants.  *See Schwab v. Crosby*, 451 F.3d 1308, 1322 (11th Cir. 2006).  As such, the *Schwab* Court reviewed the state court's denial of the petitioner's claim of a conflict of interest, which he claimed resulted in a Sixth Amendment violation, pursuant to *Strickland*. *Id*. Specifically, the Defendant contended that the public defender's office employees were witnesses and the public defender was unable to cross examine them effectively because of the conflict of interest. The Eleventh Circuit concluded that the petitioner had failed to demonstrate prejudice because he did not show a reasonable probability existed that the outcome of the trial would have been different had the public defender conducted the cross-examination of the employees of the public defender's office called as witnesses. *Id*.

In the instant case, the state court analyzed Petitioner's claim pursuant to *Strickland* and determined that Petitioner had not demonstrated prejudice because the conflict of interest occurred after his conviction and sentence.  Petitioner's conflict of interest claim does not concern the joint representation of co-defendants.  As such, the state court's application of *Strickland* rather than *Sullivan* was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  *See Schwab*, 451 F.3d at 1328 (quoting 28 U.S.C. § 2254(d)(1)).

Moreover, Petitioner has not established that the state court's denial of this claim pursuant to *Strickland* warrants federal habeas relief.  As noted by the state court, the alleged conflict of interest arose after Petitioner was convicted and sentenced.  Petitioner filed a motion to remove Hudson as his attorney while his appeal was pending, and the

23

Fifth District Court of Appeal granted his motion.  Hudson was subsequently replaced by an attorney who was appointed to represent Petitioner in his appellate proceeding.[9] Petitioner's appointed appellate counsel filed an *Anders* brief and a motion to withdraw on November 23, 2004.   Petitioner filed a pro se voluntary dismissal of his appeal on December 1, 2004, asserting that he would pursue a Rule 3.850 motion.

Furthermore, a review of the record demonstrates that defense counsel represented Petitioner during his trial by thoroughly cross-examining witnesses and presenting witnesses to support Petitioner's defense that the sexual intercourse was consensual.  In fact, defense counsel was successful in arguing that Petitioner should be allowed to call the victim's former roommate, who testified that the victim had previously made allegations against two other individuals that she had been raped.  Finally, to the extent Petitioner contends that his remaining claims of ineffective assistance of counsel prove the adverse effect of counsel's representation resulting from the conflict of interest, the Court has considered these claims and concluded that Petitioner has not shown that counsel rendered ineffective assistance.   As such, Petitioner has not demonstrated that a reasonable probability exists that the outcome of the proceedings would have been different absent the conflict of interest, and the state court's denial of this claim was neither contrary to, nor an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court.  Accordingly, this claim is denied pursuant to Section 2254(d).

---

[9]The Fifth District Court of Appeal sanctioned Hudson on May 28, 2004, based on her abuse of the appellate rules in Petitioner's appeal.  *See Price v. State*, 873So. 2d 1246 (Fla. 5th DCA 2004).

I.     **Claim Ten**

Petitioner asserts that appellate counsel rendered ineffective assistance by failing to comply with the appellate rules.  Specifically, Petitioner relies on the fact that his trial counsel, Hudson, who initially represented Petitioner on appeal, failed to comply with the rules and orders of the appellate court, resulting in the imposition of sanctions.

Respondents argue that Petitioner failed to raise this claim in the state courts. However, Respondents are incorrect.  The record demonstrates that Petitioner raised this claim in his first state habeas petition, alleging ineffective assistance of appellate counsel, filed in the Fifth District Court of Appeal.  *See* App. R at 11.  The Fifth District Court of Appeal summarily denied the claim.  (App. T.)  Accordingly, the claim is not procedurally barred, and the Court will consider the merits of the claim.

The record reflects that Hudson in fact was sanctioned by the state appellate court for failing to comply with the appellate rules and with court orders, and subsequently, new appellate counsel was appointed to represent Petitioner.  (App. R.)  Thus, Petitioner has established that Hudson was deficient in her representation of him on appeal.  Petitioner has not established, however, that he was prejudiced by Hudson's performance.  A new attorney was appointed to represent Petitioner on direct appeal.  Thereafter, Petitioner, acting *pro se*, subsequently moved to voluntarily dismiss his appeal.   As such, Petitioner has failed to demonstrate that a reasonable probability exists that the outcome of his appeal would have been different had Hudson not performed deficiently.  Accordingly, claim ten is denied pursuant to Section 2254(d).

I.     **Claim Eleven**

Petitioner asserts that his second appellate counsel rendered ineffective assistance by representing to the appellate court that she had reviewed the entire record prior to filing an *Anders*[10] brief.  Respondents assert that Petitioner failed to raise this claim in the state courts, and thus, it is unexhausted and procedurally barred.

Petitioner raised this specific claim of ineffective assistance of appellate counsel in his final state habeas petition.  (App. Y.)  The Fifth District Court of Appeal dismissed the petition.  (App. Z.)  Rule 9.141(5)(c) of the Florida Rules of Appellate Procedure provides that "[t]he court may dismiss a second or successive petition if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure."  Fl. R. App. P. 9.141(5)(c).  Petitioner raised the instant claim in a successive state habeas petition, and the state court dismissed it.  Thus, the instant claim is procedurally barred.

Furthermore, Petitioner has neither alleged nor shown cause or prejudice that would excuse any procedural default.  Likewise, he has not shown the applicability of the actual innocence exception.  A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, claim eleven is procedurally barred from review by this Court.[11]

---

[10]In *Anders v. California*, 386 U.S. 738 (1967), the United States Supreme Court established a procedure for appellate counsel when counsel believes that there is no merit to the appeal.

[11]Alternatively, assuming the instant claim was not procedurally barred, it would be denied on the merits.  Petitioner has not demonstrated that appellate counsel failed to raise a meritorious issue on appeal.  Moreover, as discussed previously, Petitioner voluntarily dismissed his direct appeal.  As such, he has not established that a reasonable probability exists that the outcome of his appeal would have been different had his second appellate

(continued...)

26

**J.     Claim Twelve**

Petitioner asserts that the appellate court erred in dismissing his direct appeal.  In support of this claim, Petitioner maintains that he should not have been allowed to dismiss his appeal because his *pro se* motion to dismiss was unauthorized since he was represented by counsel.

Petitioner raised this claim in his first state habeas petition.  The Supreme Court of Florida considered the claim and denied relief.  (App. Q at 9-11.)  The court noted that Petitioner filed a motion to dismiss the proceeding pursuant to Rule 9.350(b) of the Florida Rules of Appellate Procedure after appellate counsel filed an *Anders* brief and the district court of appeal had provided Petitioner an opportunity to respond to the *Anders* brief.  *Id*. The court reasoned that the district court of appeal had discretion under Florida law to allow Petitioner to proceed *pro se* in an appellate proceeding.  *Id*. at 10-11.

Petitioner has failed to show that the state court's denial of this claim is either contrary to, or an unreasonable application of, any clearly established federal law as determined by the Supreme Court.  The Supreme Court of the United States had held that courts may exercise their discretion to allow a lay person to proceed *pro se*.  *See Martinez v. Court of Appeal of California, Fourth Appellate Dist*., 528 U.S. 152, 163 (2000).  In the instant case, the state court, acting within its discretion, allowed Petitioner to proceed *pro se* on direct appeal when he filed his motion to voluntarily dismiss the proceeding. Accordingly, this claim is denied pursuant to Section 2254(d).

**K.     Claim Thirteen**

---

[11](...continued)
counsel not allegedly misrepresented that she reviewed the entire record.

Petitioner maintains that the State failed to prove that the victim was physically incapacitated as defined by the statute. Petitioner maintains that he was improperly charged with a first degree felony based on the element of physical incapacitation and instead should have been charged with a second degree felony as the victim was not physically incapacitated.

Respondents assert that this claim has not been exhausted because it was not raised on direct appeal. Review of the record indicates that this claim was not raised on direct appeal. Thus, this Court is precluded from considering this claim absent an exception as it was not exhausted and would clearly be barred if returned to state court.

Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim thirteen is procedurally barred and must be denied.[12]

Any of Petitioner's allegations not specifically addressed herein have been found

---

[12]Alternatively, the claim would be denied on the merits. Pursuant to Florida law, "[a] person who commits sexual battery upon a person 12 years of age or older without that person's consent, under any of the following circumstances, commits a felony of the first degree. . . [w]hen the victim is physically incapacitated." § 794.011(4)(f), Fla. Stat. "'Physically incapacitated' means bodily impaired or handicapped and substantially limited in ability to resist or flee." § 794.011(1)(j), Fla. Stat. The evidence presented at trial established that the victim was completely blind. Thus, viewing the evidence in the light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found the victim was physically incapacitated beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307 (1979) (holding that when considering a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

to be without merit.

IV.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.; *Lamarca*, 568 F.3d at 934.  However, a  prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has demonstrated that reasonable jurists could find this Court's assessment of Petitioner's claim three debatable or wrong.  As discussed *supra*, the Eleventh Circuit has questioned the applicability of *Strickland* to claims of ineffective assistance of counsel premised on trial counsel's failure to raise a *Batson* challenge.  Thus, a certificate of appealability is granted regarding whether trial counsel rendered ineffective assistance by failing to raise a *Batson* objection to the prosecutor's peremptory strike of the prospective African-American juror.  A certificate of appealability is denied as

to all other claims.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus (Doc. No. 7) filed by Herbert N. Price, Jr. is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     Petitioner is **GRANTED** a Certificate of Appealability on claim three and **DENIED** a Certificate of Appealability on the remaining claims.

3.     Petitioner's Motion to Rule (Doc. No. 27) is **DENIED** as moot.

4.     The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 28th day of June 2011.


Copies to:
OrlP-1 6/28
Counsel of Record
Herbert N. Price, Jr.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE